## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

MARCUS L. CARGLE,         )
                           )
                Plaintiff,     )
                           )
v.                         )         No. CIV 19-115-RAW-SPS
                           )
JAMES A. YATES and      )
OFFICER YORK,          )
                           )
               Defendants.   )

## OPINION AND ORDER

This action is before the Court on the defendants' motion for summary judgment. Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Mack Alford Correctional Center in Stringtown, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Davis Correctional Facility (DCF), a private prison located in Holdenville, Oklahoma. The defendants are DCF Warden James A. Yates and DCF Correctional Officer York. The Court has before it for consideration Plaintiff's amended complaint (Dkt. 17), the defendants' motion (Dkt. 37), and a special report prepared by DCF officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 31). Plaintiff has not filed a response to the motion.

**Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In

making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Plaintiff's Allegations**

Plaintiff alleges that on December 26, 2018, he and his cellmate Everett Gillum were notified that they would be moved to another unit because they had failed their urinalyses. While on lockdown and awaiting transport, Plaintiff and Gillum allegedly were accosted by another prisoner who said Plaintiff and Gillum would receive a package in the segregation unit with delivery instructions. (Dkt. 14 at 4,12).

When Defendant York delivered Plaintiff's and Gillum's property the next day, York allegedly told them to "look inside the mattress." Plaintiff claims he and Gillum found three cell phones and one-half pound of marijuana in a package. While being escorted to the showers on January 3, 2019, Plaintiff and Gillum allegedly were instructed to "traffic the contraband so it could reach its destination." Upon returning to their cells, Correctional Officer Hobbs attempted to retrieve the contraband from Gillum, who had hidden it under his T-shirt. Hobbs dropped the package and allegedly forced Gillum to the ground. Hobbs then took the package and "paraded it" as contraband. (Dkt. 17 at 2).

Plaintiff further alleges that he and his cellmate began receiving threats when prisoners in the general population were brought to segregation. This resulted in Plaintiff's

and his cellmate's concern for their safety, because they eventually would be returned to the general population. Plaintiff requested a transfer to another facility for his safety after the "bumbled delivery and subsequent backlash." He claims he subsequently incurred medical expenses for related panic attacks. (Dkt. 17 at 13).

**Exhaustion of Administrative Remedies**

The defendants allege plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to an affidavit by Terry Underwood, DCF Grievance Coordinator, there was at all relevant times an administrative remedies grievance policy available for DCF inmates. By contract, DCF utilizes the Oklahoma DOC administrative remedies grievance policy, OP-090124. (Dkts. 37-2; 37-3).

DOC Policy OP-090124 requires an inmate to attempt initially to resolve any issue through informal resolution by communicating with staff and by submitting a Request to Staff. (Dkt. 37-3 at 7-9). If the inmate is not satisfied with the result, he must file a formal grievance. (Dkt. 37-3 at 9-13). The final step in the administrative remedies process requires the inmate to file an appeal to the DOC Administrative Review Authority. (Dkt. 37-3 at 13-

16).

Ms. Underwood asserts in her affidavit that she maintains the DCF grievance records, and she located five grievances submitted by Plaintiff during the relevant period:

**Grievance 19-051**, submitted on January 31, 2019, concerned Plaintiff's loss of a television when he was placed in segregation.  (Dkt. 37-4 at 2-4).  Because there is no property claim in this lawsuit, this grievance is not relevant to the proceedings.

**Grievance 19-067**, submitted on February 5, 2019, asked "Where is the contraband CCTV will document we were busted with but never made it to contraband or COS Brown Dept Warden Perez?" (syntax in original).  The grievance was returned unanswered on February 7, 2019, with the notations:

  • An answered Request to Staff to the correct staff member must be attached;

  • Grievance form not properly completed;

  • The grievance must be specific as to the complaint, dates, places, personnel involved
,   and how the inmate was affected; and

  • Only one issue or incident is allowed per grievance.

Plaintiff was granted ten days to properly resubmit an original grievance with the noted corrections completed.  (Dkt. 37-4 at 5-7).  Because Plaintiff did not pursue an appeal, no claim was exhausted with this grievance.

**Grievance 19-075**, submitted on February 13, 2019, concerned the loss of a television when Plaintiff was placed in segregation.  Because Plaintiff did not make a property claim in this lawsuit, this grievance is not relevant to the proceedings, and no claim was exhausted by the grievance.  (Dkt. 37-4 at 8-10).

**Grievance 19-077**, submitted on February 13, 2019, concerned mail issues.  Because Plaintiff  did not raise any mailroom claims in this lawsuit, this grievance is not relevant to

the proceedings and no claim was exhausted by the grievance.  (Dkt. 37-4 at 11-13).

**Grievance 19-139**, submitted on March 21, 2019, concerned a Protective Measures Investigation (PMI) and requested a transfer.  Plaintiff requested the approval of a PMI form and to "instruct AS CM Bransfield to put in transfer pkt (lateral) to go to another facility where existing threat on our lives and safety do not exist."  The grievance was returned unanswered on March 21, 2019, with the following notations:

• An answered Request to Staff addressed to the proper staff member must be attached, and

• Only one issue or incident is allowed per grievance.

Plaintiff was granted ten days to resubmit a proper original grievance with the noted corrections.  (Dkt. 37-4 at 14-16).  Because Plaintiff did not pursue an appeal, no claim in this grievance was exhausted.

Further, Mark Knutson, the DOC Director's Designee, states by affidavit that he made a diligent search of records maintained by his office, and he found only one misconduct appeal that was submitted in 2017.  There were no grievance and misconduct filings by Plaintiff to the DOC Director during the relevant period of December 2018 to February 2019.  (Dkt. 37-5 at 3).

**Conclusion**

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact concerning whether Plaintiff's claims are unexhausted.  Therefore, summary judgment must be GRANTED to Defendants pursuant to Fed. R. Civ. P. 56(a).

**ACCORDINGLY,** the defendants' motion for summary judgment (Dkt. 37) is GRANTED.

**IT IS SO ORDERED** this 7th day of September 2021.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA